1
2
3
4         UNITED STATES DISTRICT COURT
5       NORTHERN DISTRICT OF CALIFORNIA
6
7   GOVINO, LLC,               Case No. 4:16-cv-06981-JSW (KAW)

8          Plaintiff,      **REPORT AND RECOMMENDATION**
                                **TO GRANT PLAINTIFF'S MOTION**
9       v.                            **FOR DEFAULT JUDGMENT**

10   WHITEPOLES LLC, et al.,      Re: Dkt. No. 27

11         Defendants.

12

13      Plaintiff govino, LLC ("Plaintiff") moves for Default Judgment against defendants

14 WhitePoles LLC (dba Vintout) and BrandsExclusive LLC (collectively "Defendants") for seven

15 causes of action, including direct and contributory infringement of U.S. Patent No. D577,547

16 ("the '547 Patent"), trade dress infringement, trademark dilution, and unfair competition with

17 respect to the govino Trade Dress, as defined below, and false and misleading advertising and

18 related unfair competition. Defendants have not appeared in this action, nor have they responded

19 to Plaintiff's complaint or motion for default judgment. Plaintiff seeks injunctive relief, profits,

20 and an award of reasonable attorneys' fees and costs.

21      On August 31, 2017, the Court held a hearing, and, for the reasons set forth below,

22 RECOMMENDS that Plaintiff govino, LLC's motion for default judgment be granted and that

23 judgment be entered against Defendants.

24                **I.    BACKGROUND**

25      govino is a small company engaged in the design, manufacturing, distribution and retail

26 sales of distinctive drinking glasses that include, *inter alia*, its GOVINO® Go Anywhere®

27 shatterproof, reusable, recyclable™ stemless wine glasses, flutes, cocktail glasses, beer glasses,

28 and decanters (collectively "GOVINO® Products"), which are readily identifiable and

distinguishable over competitor products, *e.g.*, by way of inclusion of a distinctive notched indent in the glass side wall ("govino Trade Dress"). (Compl., Dkt. No. 1 ¶¶ 9-10, 12-15; Exs. to Compl., Dkt. No. 3, Exs. A-F; Decl. of Scott M. Lowry, "Lowry Decl.," Dkt. No. 27-1 ¶ 10, Exs. 8-10.) The U.S. Patent and Trademark Office ("USPTO") awarded govino multiple design patents incorporating the govino Trade Dress, including U.S. Patent Nos. D577,547; D646,926; D724,898; and D685,218 (collectively "GOVINO® Design Patents"). (Compl. ¶ 11; Dkt. No. 3, Exs. A-D, G; Lowry Decl. ¶¶ 4-8, Exs. 1-5.)   and govino won several prestigious design awards for GOVINO® Products incorporating the govino Trade Dress. (Compl. ¶ 12.) Also, all GOVINO® Products and related product packaging display the govino Trade Dress. (Compl. ¶¶ 9, 10, 12, 26, 40; Dkt. No. 3, Exs. A-F.)

Since about 2008, govino has substantially continuously and exclusively marketed and sold the GOVINO® Products incorporating the govino Trade Dress in commerce and, as a result of govino's expenditure of considerable time, effort, and money to advertise and publicize this feature, the govino Trade Dress is well known and has become associated only with govino, and serves to designate govino as an exclusive manufacturing source distinguishable over competitor products. (Compl. ¶¶ 8-10, 12, 15, 18, 19, 23, 24, 39; Dkt. No. 3, Exs. B-G, N-O.) Consumers readily see the govino Trade Dress in the GOVINO® Products and in connection with govino's advertising and product packaging, such as at the point of purchase in retail stores and at online retailers. (Compl. ¶¶ 9-10, 12-15; Dkt. No. 3, Exs. B-F, N-O.)

Long after govino obtained the GOVINO® Design Patents and began marketing and selling GOVINO® Products incorporating the govino Trade Dress in commerce, Defendants commenced marketing and selling drinking glasses that infringe the '547 Patent and infringe the govino Trade Dress. (Compl. ¶¶ 16-19; Dkt. No. 3, Exs. H-O.) In fact, some of Defendants' products are virtually indistinguishable from the '547 Patent (Dkt. No. 3, Ex. G) and are identical to the GOVINO® Wine Glass (Dkt. No. 3, Exs. A-C). Defendants intend to use govino's goodwill to obtain a profit at govino's expense, and Defendants willfully and intentionally adopted and commenced selling and offering for sale in commerce the confusingly similar products through the same outlets as govino, including Amazon. (Compl. ¶¶ 19, 26, 27, 46; Dkt. No. 3, Exs. N-O.)

Defendants refused to cease and desist their infringing activity after multiple notifications, thereby forcing govino to file the present action. (Compl. ¶ 23, 24; Dkt. No. 3, Ex. N-O.)

On January 30, 2017, default was entered against Defendant White Poles LLC & Defendant BrandExclusive LLC. (Dkt. No. 13.) On May 25, 2017, Plaintiff filed the motion for default judgment. (Pl.'s Mot., Dkt. No. 27.) Thereafter, the motion was referred to the undersigned for report and recommendation. On June 15, 2017, Plaintiff filed a motion for leave to file a supplemental declaration in support of its motion for default judgment, which was granted. On August 31, 2017, the Court held a hearing on the motion for default judgment, at which Defendants did not appear. On October 30, 2017, Plaintiff filed a second supplemental declaration, in which it clarified the hours spent by Plaintiff's counsel and furnished the undersigned with information regarding Defendants' likely cost of production. (2d Decl. of Scott M. Lowry, "2d Supp. Lowry Decl.," Dkt. No. 44.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id*. at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

3

Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III.  DISCUSSION

### A.  Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

### i.  Subject Matter Jurisdiction

This civil action arises under the laws of the United States, Title 35 United States Code, particularly §§ 271 and 281; the Federal Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended (the "Lanham Act") and California Common Law; and California Business & Professions Code § 17200 and 17500 *et seq.* (Compl. ¶ 1.)  This court has original jurisdiction over the parties and the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b), as well as under 15 U.S.C. §§ 1121. *Id.* at ¶ 2.

### ii.  Personal Jurisdiction

Defendants are Wyoming limited liability companies. (Compl. ¶¶ 6-7.) California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  Thus, this Court may assert specific personal jurisdiction over nonresident defendants if three requirements are met:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Id.* (quotation marks and citation omitted).  Plaintiff bears the burden of satisfying the first two requirements; the burden then shifts to the defendant to present a "compelling case" that the

4

exercise of jurisdiction would be unreasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citations omitted).

### a. Purposeful Direction

The first requirement encompasses two distinct concepts: purposeful availment and purposeful direction. *See Yahoo!, Inc. v. La Ligue Contre Le Racisme Et L' Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Tort claims and tort-like claims—including intellectual property claims—are analyzed under the purposeful direction concept. *See Craigslist, Inc. v. Kerbel*, C-11-3309 EMC, 2012 WL 3166798, at *4 (N.D. Cal. Aug. 2, 2012)("In analyzing purposeful direction, the Court applies the 'effects' test in *Calder v. Jones*, 465 U.S. 783 (1983)."). Jurisdiction is proper under the effects test if the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). All three requirements are met here.

First, Defendants committed intentional acts: they purposefully advertised for sale products that infringed on Plaintiff's patents and trade dress. (*See* Compl. ¶¶ 15-19, 29, 39-40.)

Second, Defendants expressly aimed their conduct at this forum. Express aiming exists where "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource, Inc. v. Academyone, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (internal quotation marks and citations omitted). Here, Defendants targeted govino, a company located in California, by advertising for sale products that infringe on govino's patents and trade dress. (*See* Compl. ¶¶ 5, 16-19.) This constitutes aiming conduct at this forum.

Third, Defendants knew they would cause harm in California because the scheme was directed at a company known to be located in California. *See also craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) ("Because Plaintiff is headquartered in California and maintains its website in California, Defendants' actions directly targeted California, and Defendants knew that Plaintiff would suffer the brunt of its harm in California.").

b.  Arising from forum-related activities

This element is established if Plaintiff would not have been injured "but for" the nonresident defendants' forum-related activities.  *See Ballard v. Savage*, 65 F. 3d 1495, 1500 (9th Cir. 1995).  As explained above, Defendants expressly targeted govino, a company located in California, by selling counterfeit goods, and govino suffered injury from the schemes in this forum, where its principal place of business is located.  *See CollegeSource*, 653 F.3d at 1079 ("We have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *Nissan*, 89 F. Supp. 2d at 1160 ("[T]he defendant's intentional exploitation of the plaintiffs' goodwill and diversion of the plaintiffs' potential customers [via the Internet] had the effect of injuring [plaintiffs] in California. But for the [defendant's] conduct, this injury would not have occurred.").  Moreover, Plaintiff expends a significant amount of resources to advertise and publicize the govino trade dress. (Pl.'s Mot. at 1.)  Accordingly, the claims arise out of Defendants' forum-related activities.

c.  Reasonableness

Because the first two requirements for exercising specific personal jurisdiction has been established, the nonresident defendant must present a "compelling case" that asserting jurisdiction would be unreasonable. *Mavrix*, 647 F. 3d at 1228 (citations omitted).  Defendants have waived their opportunity to make this showing by failing to participate in this litigation, despite having initially stipulated to an extension of time to respond to the complaint. (*See* Dkt. No. 10.)  Thus, Defendants not only had "fair warning" that they might be sued in California, but were also aware that they were being sued. Accordingly, the exercise of personal jurisdiction is not unreasonable, and the district court has personal jurisdiction over the defendants.

### iii.  Venue

Venue is proper in the Northern District of California under 28 U.S.C. § 1391, as Plaintiff is located within the Northern District.

### iv.  Service of Process

Plaintiff served the authorized agents for both defendants with a copy of the Complaint and Summons under Fed. R. Civ. P. 4(h)(1) and in compliance with Wyoming state law, and filed the

affidavits of the proof of service with the Court. (Dkt. Nos. 8-9.)

**B.     Application to the Case at Bar**

**i.     Prejudice to Plaintiff**

Plaintiff will suffer prejudice if the Court does not enter default judgment, because govino has no other recourse for recovery for the harm already inflicted by Defendants; and govino cannot stop continued future infringement without an injunction. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding that "Potential prejudice to Plaintiffs favors granting a default judgment"). Thus, the Court finds that if Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery.

**ii.     Merits of Plaintiff's Claims & Sufficiency of the Complaint**

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. As such, the Court finds that govino has sufficiently pleaded meritorious claims in its Complaint, as follows:

a.     <u>Direct Patent Infringement under 35 U.S.C. §§ 271(a) and 281; and
Contributory Patent Infringement under 35 U.S.C. §§ 271(c) and 281</u>

In its first and second claims for direct and contributory patent infringement under 35 U.S.C. §§ 271(a) and 281, Plaintiff alleges that Defendants, through their respective agents, employees, and servants, have, and continue to, knowingly, intentionally, and willfully directly (and indirectly by virtue of sales through Amazon and to third parties) infringe the '547 Patent, for which govino is the assignee of the entire right, title, and interest. (Compl. ¶¶ 11, 16-18, 25, 26, 28-37; Dkt. No. 3, Exs. H-O.)

Furthermore, the Defendants are making, using, selling, offering for sale, and/or importing drinking glasses having a design that would appear to an ordinary observer to be substantially similar to the design claim of the '547 Patent, including, Defendants' "Neel", "Claire", and "Zelenka" product lines identified under SKU# VIN-N19-1; SKU# VIN-C19-1; SKU# VIN-Z19-1; SKU# VIN-N23-1; SKU# VIN-C23-1; and SKU# VIN-Z23-1 (collectively "Patent Infringing Glasses"). (Compl. ¶¶ 16-18, 25, 26, 28-37; Dkt. No. 3, Exs. H-I,K-O.) The Court finds that the only exception is Defendants' double-notched, stemless wine glasses, SKU# VIN-N19-2; SKU#

VIN-C19-2; SKU# VIN-Z19-2 (Dkt. No. 3, Ex J.), because Plaintiff's design patents are for single-notched glassware.

Each of the Patent Infringing Glasses were made, used, offered for sale, sold, or otherwise imported into the United States by Defendants, and Defendants advertised and sold the Patent Infringing Glasses in commerce through Defendants' website (vintout.com), Amazon, and Facebook. (Compl. ¶¶ 16-17, 20; Dkt. No. 3, Exs. H-O.) The Patent Infringing Glasses are substantially similar such that an ordinary observer familiar with the '547 Patent and the Patent Infringing Glasses would be deceived into believing that the Patent Infringing Glasses are the same as govino's '547 Patent. (Lowry Decl. ¶ 9; Ex. 6 (comparing the '547 Patent to the Patent Infringing Glasses)).

Defendants' acts of infringing the '547 Patent were without permission or license from govino. (Compl. ¶¶ 23, 24; Dkt. No. 3, Exs. N-O.) Moreover, Defendants had actual knowledge of govino's rights in the '547 Patent at least as early as Sept. 27, 2016 when govino delivered its first cease and desist letter to Defendants, and Defendants admit they "knew of or had purchased one or more of the govino Products, and were aware that the govino Products were for sale through the Amazon.com marketplace. . . . [and] [r]ecogniz[ed] the extreme commercial success of the govino Products, [and thereafter] engaged in the business of making, using, importing, selling, or otherwise offering to sell" the Patent Infringing Glasses. (Compl. ¶ 18.) Thus, the Court finds that Defendants' actions constitute willful and intentional infringement of the '547 Patent. (Compl. ¶¶ 18, 23-26, 30; Dkt. No. 3, Exs. N-O.) Consequently, Defendants knew, or it was so obvious that Defendants should have known, that their actions constituted direct and/or contributory infringement of the '547 Patent. (Compl. ¶¶ 10, 12-15, 18, 23-26; Dkt. No. 3, Exs. N-O.)

> b. Trade Dress Infringement Under 15 U.S.C. § 1051 *et seq.*; Trademark Dilution Under 15 U.S.C. § 1125(a); and Unfair Competition re Trade Dress Infringement Under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California common law

In its third, fourth, and fifth causes of action for trade dress infringement under 15 U.S.C. § 1051 *et seq.*, trademark dilution under 15 U.S.C. § 1125(a), and unfair competition regarding trade dress infringement under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and

California common law, Plaintiff alleged that Defendants, through their agents, employees, and servants, have, and continue to, knowingly, intentionally, and willfully directly infringe the govino Trade Dress prominently shown in all GOVINO® Products, and in violation of 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California common law. (Compl. ¶¶ 9, 10, 15-19, 25, 26, 38-53; Dkt. No. 3, Exs. A-F, N-O; Lowry Decl. ¶ 10; Exs. 6, 7 (summarizing the GOVINO® Products).) Moreover, the govino Trade Dress is emphasized on the product packaging for all GOVINO® Products. (Compl. ¶¶ 10, 12, 40, 41; Dkt. No. 3, Exs. A-F; Lowry Decl. ¶ 10; Exs. 9-10 (summarizing the GOVINO® Products product packaging).) For example, all packaging shows the govino Trade Dress in wire form or as a picture on the box front and on the side where a white semi-circle noticeably disrupts a colored boarder next to the govino Trade Dress. *See id*.

Defendants make, use, sell, offer to sell, and/or import drinking glasses incorporating the govino Trade Dress, including the "Neel", "Claire", and "Zelenka" product lines identified under SKU# VIN-N19-1; SKU# VIN-C19-1; SKU# VIN-Z19-1; SKU# VIN-N23-1; SKU# VIN-C23-1; SKU# VIN-Z23-1; SKU# VIN-N13-1; SKU# VIN-C13-1; SKU# VIN-Z13-1; SKU# VIN-N20-1; SKU# VIN-C20-1; and SKU# VIN-Z20-1 (collectively "TD Glasses"). (Compl. ¶¶ 16, 17, 20; Dkt. No. 3, Exs. H-I, K-M; Lowry Decl. ¶¶ 11; Ex. 11 (comparing the TD Glasses to the govino Trade Dress).) Again, as set forth above, Defendants' double-notched, stemless wine glasses, SKU# VIN-N19-2; SKU# VIN-C19-2; SKU# VIN-Z19-2 (Dkt. No. 3, Ex J.) do not incorporate Plaintiff's trade dress, because Plaintiff's protectable dress is single-notched glassware. *See* discussion *supra* Part III.B.ii.a.

Each of the TD Glasses were made, used, offered for sale, sold, or otherwise imported into the United States by Defendants at least by way of advertising and selling through Defendants' website (vintout.com) and Amazon, and include a notched indent so similar to the govino Trade Dress that consumers are likely to be confused regarding whether the TD Glasses are genuine products. (Compl. ¶¶ 16-19; Dkt. No. 3, Exs. H-M.) The Court finds that Defendants have willfully infringed upon the govino Trade Dress in violation of 15 U.S.C. § 1125(a), and that Defendants have admitted that its trade dress infringement constitutes unfair competition under the

common law and statutory laws of the State of California, and particularly Cal. Bus. & Prof. Code § 17200 *et seq*. (Compl. ¶¶ 38-53.)

### 1. Plaintiff's Trade Dress Is Protectable Designation of Origin

Lanham Act § 43(a) broadly provides a cause of action for the use by any person of "any container for goods . . . symbol, or device, or any combination thereof . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a) (2012). The "breadth of the confusion-producing elements actionable under § 43(a) has been held to embrace . . . 'trade dress' – a category that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded . . . to encompass the product's design." *Wal-Mart Stores v. Samara Bros.,* 529 U.S. 205, 209 (2000). Trade dress is thus a "symbol" or "device" under the Lanham Act. *Id*. While trade dress may not necessarily be "inherently distinctive", it can acquire distinctiveness by showing "secondary meaning." *Id*. at 214. One way to do so, under 15 U.S.C. § 1052(f), is to provide "proof of substantially exclusive and continuous use thereof as a mark . . . in commerce for the five years before the date on which the claim of distinctiveness is made . . . ." Such evidence can serve as "*prima facie* evidence that the mark has become distinctive". 15 U.S.C. § 1052(f); *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985) ("Proof of 'substantially exclusive and continuous use' for the five years . . . is acceptable as *prima facie* evidence of secondary meaning . . . [and] that the mark is distinctive.").

govino has been using and selling the govino Trade Dress in commerce substantially, exclusively, and continuously since at least 2008, and longer than the five years required for attaining *prima facie* secondary meaning and acquired distinctiveness under Section 1052(f). (Compl. ¶¶ 9-10, 12-14; Dkt. No. 3, Exs. A-F.) Importantly, govino enjoys comprehensive design patent coverage that permits govino to exclude others from making, using, selling, etc. glasses including the govino Trade Dress. (*See, e.g.*, Compl. ¶ 11; Dkt. No. 3, Ex. G; Lowry Decl. ¶¶ 4-7; Exs. 1-4.) Thus, the Court finds that govino's use in commerce has been substantially exclusive and continuous over the last nine years and serves as *prima facie* evidence under Section 1052(f) and relevant case law that the govino Trade Dress has acquired distinctiveness through secondary

meaning, and is, thus, enforceable as a trademark. *Id.*

Moreover, the Ninth Circuit held that deliberate copying of a competitor name, symbol, packaging, other marking or combination of elements establishes a *prima facie* case of secondary meaning (and also likelihood of confusion). *Vision Sports Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("proof of copying strongly supports an inference of secondary meaning"); *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960) (holding that proof of copying is sufficient to establish secondary meaning). The Court further finds that Defendants admitted they knew of the GOVINO® Products and, in recognizing the extreme commercial success, decided to engage in the business of making, using, importing, selling, or otherwise offering to sell its own TD Glasses and knock off the govino Trade Dress. (Compl. ¶ 18; Dkt. No. 3, Exs. H-M.)

### 2. Defendants Concurrent Use Is Likely To Cause Confusion

The basic test for trademark infringement is a likelihood of confusion, which exists "whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks". *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997) ("[I]nfringement of an unregistered mark is triggered by a use which 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association'".); *Acad. of Mot. Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991). Here, the Court finds that Defendants admit they willfully, intentionally, and deliberately caused a likelihood of confusion by using, advertising, and selling the TD Glasses in commerce. (Compl. ¶¶ 40, 50.)

In assessing a likelihood of confusion for trademark infringement and related unfair competition,

> courts in the Ninth Circuit have typically applied the eight factors identified . . . in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979): (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389, at *5 (N.D. Cal. Nov. 21, 2012); *see also AMF, Inc.*

United States District Court
Northern District of California

*v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979); *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). In *GoTo.com, Inc. v. Walt Disney Co.*, the Ninth Circuit found that "the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the . . . marketing channel." 202 F.3d 1199, 1205 (9th Cir. 2000); *Brookfield Commun., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) (stating that the "similarity of the marks and whether the two companies are direct competitors - will always be important"). Here, as set forth below, Defendants misappropriated the govino Trade Dress, sold confusingly similar glassware through the some of the same marketing channels, such as Amazon, and to the same consumers, such that the *Sleekcraft* factors show a likelihood of confusion and infringement of the govino Trade Dress.

### i. Similarities of the Marks

First, the similarities between the govino Trade Dress and Defendants' TD Glasses are remarkably similar. (*Cf.* Compl. ¶¶ 10, 12, 40, 41; Dkt. No. 3, Exs. A-F *with* Compl. ¶¶ 16, 17, 20; Dkt. No. 3, Exs. H-M; *see also* Lowry Decl. ¶ 11; Ex. 11.) Each of the TD Glasses includes a notched indent of nearly identical construction as the GOVINO® Products. *See ids*. Consumers will be unable to discern the differences in the origination of the products, especially when Defendants' TD Glasses appear next to the GOVINO® Products, such as on Amazon. (*Cf.* Compl., ¶¶ 10, 12, 40; Dkt. No. 3, Exs. B-F *with* Compl. ¶¶ 16, 20; Dkt. No. 3, Exs. I-K.) Thus, the Court finds that the first principal *Sleekcraft* factor weighs in favor of govino.

### ii. Similarities of the Goods

Second, the goods in this case are identical – all are drinking glasses. (*Cf.* Compl. ¶¶ 10, 12, 40, 41; Dkt. No. 3, Exs. A-F *with* Compl. ¶¶ 16, 17, 20; Dkt. No. 3, Exs. H-M; *see also* Lowry Decl. ¶¶ 9-11; Exs. 6-8, 11.) Some of the TD Glasses are even nearly indistinguishable from the GOVINO® Products. (Lowry Decl. ¶¶ 9, 11; Exs. 6, 11.) Importantly, govino's products and Defendants' products embrace the exact same category of goods and include no discernible differences. Thus, the Court finds that the second principal *Sleekcraft* factor weighs in favor of

govino.

### iii.  Similarities of the Trade Channels

Defendant and govino use the exact same trade channels for selling and/or distributing drinking glasses, such as through Amazon.com. (Compl. ¶ 10, 16-18; Dkt. No. 3, Exs. B-F, I-K.) In fact, some Amazon product listings show govino products next to Defendants' products. (Dkt. No. 3, Ex. B at 2; Ex. C at 2; Ex. F at 2; Ex. I at 2; Ex. J at 2, 6.) Accordingly, Defendants target the exact same consumers as govino in the exact same trade channels.  Thus, the Court finds that the third principal *Sleekcraft* factor weighs in favor of govino.

Since the three primary *Sleekcraft* factors heavily favor govino, *i.e.*, similarities of the (1) marks, (2) goods, and (3) trade channels, the Court finds a likelihood of confusion.

### iv.  Defendants' Intent

The Court will now turn to the six remaining *Sleekcraft* factors, the first of which requires analyzing defendants' intent.  Here, Defendants admit copying govino's established and well known trade dress and establishes Defendants' wrongful intent and demonstrates a likelihood of confusion (and secondary meaning). *See VisionSports, Inc.,* 888 F.2d 609 at 615. The Ninth Circuit stated in *Academy,* that when the evidence shows deliberate adoption of a mark to "obtain advantage from the other's good will, we may infer a likelihood of confusion". 944 F.2d at 1456. Defendants' copying was not a mistake. Rather, Defendants "knew of or had purchased one or more of the govino Products" and willfully and deliberately copied "the distinctive product configuration of the govino Products." (Compl. ¶¶ 18, 25, 26, 30, 40, 50, 47, 61.) A deliberate intent to copy a mark is "the most damning element" against an accused infringer and "alone may be sufficient to justify the inference that there is confusing similarity". *Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 507 (9th Cir. 1991). "[C]ourts almost unanimously presume a likelihood of confusion based on a showing of intentional copying". *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 846 (9th Cir. 1987); Compl. ¶ 26 ("Defendants created the [TD] Glasses to engage in the willful and intentional infringement of govino's proprietary rights".); Compl. ¶ 40 ("Defendants . . . intentionally adopted and commercially used and sold the confusingly similarly configured [TD] Glasses, *e.g.*, including govino's distinctive notched indent

as shown in Exhibits A-E, so as to cause a likelihood of confusion among the relevant purchasing public . . . .").  Thus, the Court finds that this element weighs heavily in favor of govino.

### v.   Evidence of Actual Confusion

The Court finds that this factor is entitled to less weight and, while govino has yet to acquire proof of actual confusion, "[t]he failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield*, 174 F.3d at 1050; *Am. Intern. Group, Inc. v. Am. Intern. Bank*, 926 F.2d 829, 832 (9th Cir. 1991) ("actual confusion is not necessary to a finding of likelihood of confusion under the Lanham . . . Act.").  Thus, the Court finds that govino's inability to prove actual confusion is entitled to little weight, particularly on default.

### vi.   Consumer Degree of Care

The goods at issue are relatively inexpensive drinking glasses to which purchasers devote only slight care and attention in making selections and purchases. (Compl. ¶¶ 10, 16-18; Dkt. No. 3, Exs. B-F, I-K.) Thus, the govino Trade Dress is prominently shown and marketed at the point of sale (Compl. ¶ 10; Dkt. No. 3, Exs. B-F; Lowry Decl. ¶ 10; Exs. 7-10), and is important to its commercial success and serves to distinguish the GOVINO® Products over competitor products. (Compl. ¶¶ 9-10, 12-15; Dkt. No. 3, Exs. A-F.) Such features allow ordinary purchasers, who typically rely "only [on] general impressions with respect to an original product or its name", to readily identify its products. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 156 (9th Cir. 1963). Despite drinking glasses being commonplace for years, Defendants designed the TD Glasses to include features identical to the govino Trade Dress so that ordinary consumers, having seen and perhaps even purchased the GOVINO® Products in the past, would believe Defendants' TD Glasses were govino products. Accordingly, the Court finds that this *Sleekcraft* factor also weighs in favor of govino.

### vii.   Strength of Mark

The Ninth Circuit includes a two-prong test for determining the "strength" of an asserted mark. *GoTo.com*, 202 F.3d at 1207. First, the Court finds that the "conceptual" strength of the

govino Trade Dress is strong, as evidenced by its unique design, multiple design patents, IDEA awards, publicity, and industry recognition. (Compl. ¶¶ 9-15; Dkt. No. 3, Exs. A-F.) Second, the "commercial" impact is highlighted by the fact that the govino Trade Dress has acquired secondary meaning and distinctiveness. (Compl. ¶¶ 9-15; Dkt. No. 3, Exs. A-F.) The Court finds that this *Sleekcraft* factor weighs in favor of govino.

### viii.  Likelihood of Product Line Expansion

govino and Defendants already sell competing drinking glasses in identical trade channels, such as through Amazon.com. (Compl. ¶ 10, 16-18; Dkt. No. 3, Exs. B-F, I-K.) The Court, thus, finds that the zone of natural expansion heavily favors govino, since the parties already compete for the same customers in the same trade channels.

### ix.  Totality of Circumstances Shows Likelihood of Confusion

Accordingly, in light of the *Sleekcraft* factors, the Court finds that there is a likelihood of confusion.

### 3.  govino's Trade Dress Rights Are Non-Functional

"Trade dress protection applies to 'a combination of any elements in which a product is presented to a buyer,' including the shape and design of a product." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (*citing* J.Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8–3 (4th ed. 2008)). Although, trade dress rights must be non-functional. *Art Attacks Ink*, 581 F.3d at 1145. Plaintiff has established that the govino Trade Dress is non-functional.  For example, the USPTO issued govino several design patents in the GOVINO® Design Patents. Design patents issue to those who "invent[] any new, original, and ornamental design for an article of manufacture . . . ." 35 U.S.C. § 171. The GOVINO® Design Patents are presumed valid and enforceable and, therefore, the design elements, including the govino Trade Dress, are presumed ornamental and non-functional. 35 U.S.C. § 282. "Design patents protect 'the novel, ornamental features of the patented design,' not the functional elements." *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1049 (D. Ariz. 2009), *aff'd* 597 F.3d 1288 (Fed. Cir. 2010) (*citing OddzOn Prods, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

In *Inwood Labs. v. Ives Labs.*, the Supreme Court noted that "a product feature is functional if it is essential to the use or purpose of the article or it affects the cost of quality of the article." 456 U.S. 844, 850 n.10 (1982). Here, the goods at issue are drinking glasses. A notched indent in the glass side wall is not essential to the use or purpose of the product as a drinking glass. Rather, govino has established that this feature is a purely ornamental aesthetic design feature, such as by way of obtaining the GOVINO® Design Patents. Indeed, drinking glasses have existed for decades without the govino Trade Dress and the use and purpose of competitor drinking glasses function equally well without the govino Trade Dress. The govino Trade Dress actually increases manufacturing costs. Moreover, the fact that govino obtained four design patents for various drinking glass and decanter designs incorporating the govino Trade Dress is further evidence of non-functionality. *Fuji Kogyo Co., Ltd. v. P. Bay Intern., Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) ("A design patent . . . is presumptive evidence of nonfunctionality, evidence that may support a similar trademark claim."); *Am. Bev. Corp. v. Diageo N.A., Inc.*, 936 F. Supp. 2d 555, 588, 597 (W.D. Pa. 2013) (rejecting defendant's functionality argument that "the curved sides of the pouch offer an 'ergonomic' shape that makes the pouch comfortable for the user to hold" in view that (a) plaintiff obtained a design patent, (b) the shape increased manufacturing costs, and (c) the shape was "not 'essential' to the purpose of the frozen cocktail"). Similar to *Am. Bev.*, the Court finds that the govino Trade Dress is non-functional because it (a) is covered by at least one design patent; (b) increases manufacturing costs; and (c) is not essential to the purpose or use of a drinking glass to store a drinkable beverage.

> c. <u>False and Misleading Advertising Under 15 U.S.C. § 1125(a) and Unfair Competition re False Advertising Under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §§ 17200 et seq., and California common law</u>

In its sixth and seventh causes of action, Plaintiff alleges that Defendants engaged in false and misleading advertising under 15 U.S.C. § 1125(a) and unfair competition re false advertising under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California common law because (1) Defendants falsely state in advertising that their products are "FDA Approved", (2) consumers are likely to depend on the false statement since FDA approval is an indicator of product safety, (3) such willful false statements are deceptive and material and likely to influence

consumers to purchase Defendants' products on the mistaken belief they are safer than competitor products, (4) Defendants caused the false statement to enter interstate commerce through ads on vintout.com and Amazon, and (5) govino is likely to be injured because Defendants are diverting consumers from govino on the false premise Defendants' products are safer or superior. (Compl. ¶¶ 20-22; Dkt. No. 3, Exs. I, J, M; *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (identifying five elements of a claim for false advertising under the Lanham Act).) Having satisfied each of the five *Skydive* factors, the Court finds that Defendants engaged in false and misleading advertising and unfair competition under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California common law.

### iii. Sum of Money at Stake

The fourth *Eitel* factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). Nevertheless, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted). Here, the sum of money at stake is tailored to Defendants' profits of $592,700.00, Plaintiff's attorneys' fees of $38,244.00, and Plaintiff's costs of $935.67, which the Court finds to be appropriately tailored to the conduct in this case, and reasonable under *Eitel*.

### iv. The Possibility of a Dispute Concerning Material Facts

Regarding the fifth *Eitel* factor, Defendants have not participated in this action and have not made any attempt to contest any of Plaintiff's material facts or legal assertions and Defendants have not moved to set aside the entry of default despite being served with all papers. Thus, the possibility of a dispute concerning the material facts is unlikely and the Court finds that the fifth *Eitel* factor weighs in favor of Default Judgment. *Solaria Corp. v. T.S. Energie e Risorse*, S.R.I., 13-CV-05201-SC, 2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014) ("[T]he absence of the possibility of a dispute concerning material facts is often easier to infer" when the "defendant has not appeared at all.").

### v. Whether Default was a Result of Excusable Neglect

Plaintiff properly served Defendants with the Summons and Complaint. (Dkt Nos. 8 & 9.) Defendants made no formal appearance in this matter and have not responded to Plaintiff's Complaint or Motion for Default Judgment. In fact, they purposely decided to not participate in the litigation after obtaining an extension of time to respond to the complaint. Consequently, there is nothing suggesting that Defendants' failure to appear and litigate this matter is based on excusable neglect. *Shanghai Automation Instr. Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

### vi. Federal Rules Preference for a Decision on the Merits

Even though "default judgment is disfavored," the Court finds that "judgment on the merits is impractical, if not impossible" given that Defendants have had ample time to file an answer and continue to refuse to do so. *Truong Giang Corp. v. Twinstar Tea Corp.*, C 06-03594 JSW, 2007 WL 1545173, at *13 (N.D. Cal. May 29, 2007). Thus, the Court finds that the seventh *Eitel* factor weighs in favor of entry of Default Judgment.

After an examination of all seven *Eitel* factors, this Court finds that the facts weight in favor of entry of Default Judgment, and the undersigned, therefore, recommends an entry of default judgment against Defendants.

## IV. RELIEF SOUGHT

### A. Damages

Plaintiff is entitled to Defendants' profits or as a result of Defendants' sales of products that infringe the '547 Patent. Pursuant to 35 U.S.C. § 289, "[w]hoever during the term of patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties." *See also Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1058 (C.D. Cal. 2011). Similarly, Plaintiff is entitled to recover Defendants' profits from the sale of any products that infringe the govino's trade dress

United States District Court
Northern District of California

rights under 15 U.S.C. § 1117. "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2nd Cir. 1990) (*quoting* 15 U.S.C. § 1117). Profit is determined by deducting certain expenses, including the cost of the goods, from gross revenue. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998).

Here, Defendants' price list identifies the quantity of product available for sale, and the wholesale price based on the quantity ordered. (*See* Supp. Decl. of Scott M. Lowry, "Supp. Lowry Decl.," Dkt. No. 34-1 ¶ 13, Ex. 9.) Thus, Defendants' profits for each SKU can be calculated according to the following formula: (Wholesale Price - Manufacturing Cost) x Quantity = Profit. Defendants' price list allows retailers to order quantities of up to 5,000 glass sets. (Supp. Lowry Decl. ¶ 14, Ex. 10.) Plaintiff is seeking judgment based on a quantity of 5,000 sets per type of glass. (*See* Supp. Lowry Decl., Ex. 10; 2d Supp. Lowry Decl. ¶¶ 6-10, Ex. 10A.) Initially, Plaintiff sought to extrapolate Defendants' profits based on its price list. (Supp. Lowry Decl., Exs. 9 & 10.) This was in error, as the profit calculation on Defendants' price list was based on the potential retailer's profit rather than the manufacturer/wholesaler's profit. *See ids.*

After the hearing, and in response to this error, Plaintiff shipped the infringing products to its own manufacturer, TricorBraun, to obtain a quote regarding Defendants' likely cost of production.[1] (2d Supp. Lowry Decl. ¶ 5, Ex. 11.) Plaintiff then submitted a revised exhibit calculating Defendants' profits. (2d Supp. Lowry Decl. ¶¶ 6-10, Ex. 10A.)

Assuming that Defendants sold at least 5,000 of each of the remaining 12[2] types of glassware at the wholesale price, the total profits would be $592,700.00:

///

///

---

[1] The Court notes that the quote is for 200,000 glasses for each type—or 50,000 sets of four glasses—because that is the minimum order quantity from the manufacturer. (2d Supp. Lowry Decl. ¶ 5, Ex. 11.) The undersigned is satisfied that, as Plaintiff argues, Defendant would have been subject to similar minimum order quantities. (2d Supp. Lowry Decl. ¶ 5.)
[2] As set forth above, the undersigned has excluded the double-notched wine glasses, because Plaintiff's design patent and trade dress only concern single-notched glassware. *See* discussion *supra* Part III.B.ii.

19

| Glass Type | Series | SKU | Wholesale Price | Defs.' Mfg. Cost | Defs.' Profit per set | Quantity | Total Profit |
|---|---|---|---|---|---|---|---|
| Stemless Wine Glasses (Set of 4) | Neel | VIN-N19-1 | 11.99 | 2.84 | 9.15 | 5000 | 45,750.00 |
| | Claire | VIN-C19-1 | 9.49 | 2.84 | 6.65 | 5000 | 33,250.00 |
| | Zelenka | VIN-Z19-1 | 11.99 | 2.84 | 9.15 | 5000 | 45,750.00 |
| Whiskey Glasses (Set to 4) | Neel | VIN-N23-1 | 11.99 | 2.96 | 9.03 | 5000 | 45,150.00 |
| | Claire | VIN-C23-1 | 9.99 | 2.96 | 7.03 | 5000 | 35,150.00 |
| | Zelenka | VIN-Z23-1 | 11.99 | 2.96 | 9.03 | 5000 | 45,150.00 |
| Stemmed Wine Glasses (Set of 4) | Neel | VIN-N20-1 | 14.99 | 2.64 | 12.35 | 5000 | 61,750.00 |
| | Claire | VIN-C20-1 | 12.55 | 2.64 | 9.91 | 5000 | 49,550.00 |
| | Zelenka | VIN-Z20-1 | 14.99 | 2.64 | 12.35 | 5000 | 61,750.00 |
| Martini Glasses (Set of 4) | Neel | VIN-N13-1 | 15.55 | 3.40 | 12.15 | 5000 | 60,750.00 |
| | Claire | VIN-C13-1 | 15.55 | 3.40 | 12.15 | 5000 | 60,750.00 |
| | Zelenka | VIN-Z13-1 | 12.99 | 3.40 | 9.59 | 5000 | 47,950.00 |
| | | | | | | **Total:** | **592,700.00** |

(*See* 2d Supp. Lowry Decl., Ex. 10A.)   The Court, therefore, recommends that govino be awarded Defendants' estimated profits from the sale of its infringing glassware in the amount of $592,700.00. *Id.*

## B.    Attorney's Fees

A court may award reasonable attorneys' fees to a prevailing party in patent litigation in an "exceptional case". 35 U.S.C. § 285. The Federal Circuit has held that the "[c]riteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct, and unprofessional behavior." *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1319 (Fed. Cir. 2006).  Similarly, a court may award reasonable attorneys' fees to a prevailing party in an exceptional case in an action for trade dress infringement, unfair competition, and dilution under 15 U.S.C. § 1117. *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir. 1997). A trade dress infringement case is exceptional for purposes of an award of attorneys' fees when the infringement is willful. *See Boney*, 127 F.3d at 826. As such, the Court deems this case "exceptional" for purposes of assessing attorneys' fees since the Defendants failed to respond to the pleadings. *See Allergan, Inc. v. Mira Life Grp., Inc.*, 2004 WL 2734822, at *4 (C.D. Cal. June 9, 2004) ("[A] case may be deemed exceptional where the defendant disregards the proceedings and does not appear.")  Since the Court found that Defendants willfully infringed the '547 Patent,

and, by virtue of the entry of default, Defendants have admitted that their acts of trade dress infringement, unfair competition, and dilution were willful, this Court finds this case exceptional and awards Plaintiff its reasonable attorneys' fees.

Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Yufa v. TSI Inc.*, 09-CV-01315-KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014). A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate in the community." *Id.* Typically, affidavits of counsel "regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted). The "community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citation omitted). Moreover, the undersigned has "recognized that the field of intellectual property law requires specialized knowledge" and has relied on the American Intellectual Property Law Association *Report of the Economic Survey* as an authority for determining reasonable attorneys' fees for intellectual property attorneys. *Yufa*, 2014 WL 4071902, at *5 (finding $500.00 per hour reasonable in view that "the average billing rate for IP attorneys in the San Francisco Bay Area was $736.00 per hour with a median rate of $500.00 per hour."). The most recent *AIPLA Report of the Economic Survey 2015* indicates that the average billing rate for IP attorneys in the San Francisco Bay Area is $651.00 per hour with a median rate of $530.00 per hour. (Supp. Lowry Decl. ¶¶ 11-12, Exs. 7-8.)

Here, Plaintiff seeks to recover $38,244.00 in attorneys' fees, which comprises 88.5 hours at between $360.00 and $380.00 per hour for attorney time; 30.4 hours at $150 per hour for paralegal time; and some attorney work performed on a flat fee basis. (2d. Supp. Lowry Decl., Ex. 1A.)

Scott M. Lowry is a partner at Lowry Blixseth LLP, who graduated from University of

New Hampshire School of Law in 2006. (Supp. Lowry Decl., Ex. 3.) He specializes in intellectual property law. *Id.* His hourly billing rate in 2016 was $360 per hour, and his rate in 2017 is $380.00 per hour. (Supp. Lowry Decl., Ex. 2.) Mr. Lowry billed a total of 88.5 hours, for a total $33,184.00 in attorneys' fees. (2d. Supp. Lowry Decl., Ex. 1A.) Additionally, Mr. Lowry billed a flat fee of $500.00. *Id.* While the Court finds that Mr. Lowry's billing rate and amount of time billed are both reasonable under the circumstances, the Court declines to recommend that fees be awarded for the $500.00 he spent that was billed on a flat fee basis, because Mr. Lowry did not provide any description of the work performed.

Jeffrey Castaneda and Norman Anderson are paralegals with the law firm, and their billing rate is $150.00 per hour. (Supp. Lowry Decl. ¶ 5) Mr. Castaneda earned a paralegal certificate in 2009 from UCLA, and has been working as a paralegal for eight years, the last five of which were spent working on intellectual property matters. (Supp. Lowry Decl. ¶ 7.) Mr. Anderson obtained his paralegal certificate from Pasadena City College, and has worked as a paralegal since 1993. (Supp. Lowry Decl. ¶ 8, Ex. 4.) Collectively, the paralegals billed 30.4 hours, incurring $4,560.00 in fees. (2d. Supp. Lowry Decl., Ex. 1A.)

The undersigned is familiar with the range of rates customarily charged by attorneys practicing before it, and the stated hourly rates appear to be commensurate with those charged for cases of this magnitude and complexity and for similar work performed by attorneys of comparable skill, experience, and reputation. In this case, Plaintiff's counsel's hourly rate of $380.00 per hour is below the $500.00 per hour found reasonable, and is well below the average rate of $651.00 per hour and the median rate of $530.00 per hour in the San Francisco Bay Area for comparable IP attorneys. (Supp. Lowry Decl. ¶¶ 11-12; Exs. 7-8.) Accordingly, the Court finds that the hourly rate requested is reasonable and that the number of hours counsel spent litigating this action is also reasonable. Plaintiff is therefore entitled to recovery attorney's fees in the amount of $37,744.00.

**C.  Costs**

In patent infringement, "[u]pon finding for the claimant[,] the court shall award the claimant damages adequate to compensate for the infringement . . . together with interest and costs

22

1  as fixed by the court." 35 U.S.C. § 284; *Wilden Pump & Engr. Co. v. Pressed & Welded Products*

2  *Co.*, 570 F. Supp. 224, 226 (N.D. Cal. 1983). Additionally, a plaintiff is entitled to recover "costs

3  of the action" in trademark infringement actions. 15 U.S.C. § 1117(a)(3). Based upon Defendants'

4  conduct in this case and the fact that Defendants' actions were willful, the Court holds that

5  Plaintiff is entitled to recover its costs incurred in bringing this action. *See* 15 U.S.C. § 1117(a)

6  and 35 U.S.C. § 284. The record substantiates $935.67 in costs for which Plaintiff's counsel has

7  requested reimbursement. (Supp. Lowry Decl. ¶¶ 9-10, Exs. 5-6.) Accordingly, the undersigned

8  recommends that Plaintiff be awarded its costs in the amount of $935.67.

9  ## V. CONCLUSION

10  In light of the forgoing, the undersigned RECOMMENDS that Plaintiff's motion for

11  default judgment be granted, as follows:

12  1.  That judgment be entered in favor of Plaintiff govino on govino's claims for direct

13  and contributory patent infringement under 35 U.S.C. § 271; Federal trade dress infringement

14  under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), unfair competition and

15  false designation of origin under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200 *et seq.*,

16  and California common law; Federal false and misleading advertising under 15 U.S.C. § 1125(a),

17  and unfair competition under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200 *et seq.*, and

18  California common law.

19  2.  That Defendants take nothing;

20  3.  That Defendants and their officers, agents, servants, employees, attorneys,

21  successors, assigns, and those in active concert or participation with them who receive actual

22  notice of this order by personal service or otherwise, are hereby permanently enjoined and

23  restrained from directly or indirectly infringing govino's U.S. Patent No. D577,547 ("the '547

24  Patent") in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale and/or

25  importing products which are covered by the claim of the '547 Patent, including but not limited

26  to Defendants "Neel", "Claire", and "Zelenka" product lines identified under SKU# VIN-N19-1;

27  SKU# VIN-C19-1; SKU# VIN-Z19-1; SKU# VIN-N23-1; SKU# VIN-C23-1; and SKU# VIN-

28

1    Z23-1 ("Patent Infringing Glasses"), or any product that is a variation thereof, during the term of

2    the '547 Patent;

3          4.     That Defendants and their officers, agents, servants, employees, attorneys,

4    successors, assigns, and those in active concert or participation with them who receive actual

5    notice of this order by personal service or otherwise, are hereby permanently enjoined and

6    restrained from infringing the govino Trade Dress in violation of 15 U.S.C. § 1125(a) by

7    developing, manufacturing, importing, advertising, and/or selling products that use trade dress

8    that is confusingly similar to the govino Trade Dress, including but not limited to Defendants'

9    "Neel", "Claire", and "Zelenka" product lines identified under SKU# VIN-N19-1; SKU# VIN-

10   C19-1; SKU# VIN-Z19-1; SKU# VIN-N23-1; SKU# VIN-C23-1; SKU# VIN-Z23-1; SKU#

11   VIN-N13-1; SKU# VIN-C13-1; SKU# VIN-Z13-1; SKU# VIN-N20-1; SKU# VIN-C20-1; and

12   SKU# VIN-Z20-1 ("TD Glasses"), and any product that is a variation thereof;

13         5.     That Defendants shall pay govino their total profits for sales of Patent Infringing

14   Glasses pursuant to 35 U.S.C. § 289 and TD Glasses pursuant to 15 U.S.C. § 1117 in an amount

15   of $592,700.00.

16         6.     That Defendants shall pay the attorneys' fees incurred by govino in the amount of

17   $37,744.00;

18         7.     That Defendants shall pay the costs incurred by govino in the amount of $935.67;

19         8.     After this Judgment has been entered by the Court, govino shall promptly serve a

20   copy of it on Defendants, and govino shall file with the Court a proof of service thereof within 15

21   days thereafter; and

22         9.     That the district court retain jurisdiction over this matter for the purpose of making

23   any further orders necessary or proper for the construction of this Judgment, the enforcement

24   thereof and the punishment of any violations thereof.

25         Any party may file objections to this report and recommendation with the district judge

26   within 14 days of being served with a copy. See 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D.

27   Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time

28   may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS*

1     *Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

2        Additionally, Plaintiff shall serve a copy of this report and recommendation on Defendants

3     within 3 days of this order.

4        IT IS SO RECOMMENDED.

5     Dated: November 3, 2017

6                                  KANDIS A. WESTMORE

7                                    United States Magistrate Judge